# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **VIRGINIA MAY HAYNES** | } | |
| **MACHADO,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:09-CV-1033-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## AMENDED MEMORANDUM OPINION

Plaintiff Virginia May Haynes Machado brings this action pursuant to Sections 205(g) and 1613(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Procedural History

Plaintiff filed her applications for disability, DIB, and SSI under Titles II and XVI of the Act on October 21, 2005. (Tr. 54, 86-87, 96). Plaintiff's applications were denied on January 3, 2006. (Tr. 54, 91-93). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 20, 2006. (Tr. 54, 94). A hearing was held before ALJ Michael Brownfield on May 9, 2008. (Tr. 591-619). In his August 28, 2008 decision, the ALJ determined that Plaintiff suffers from the following impairments: chronic obstructive pulmonary disease ("COPD") and chronic back pain

secondary to lumbar degenerative disc disease.  (Tr. 56).  It was the ALJ's finding that none of these impairments, singly or in combination, were severe enough to meet one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 § 416.920(d).  (Tr. 59).  The ALJ further determined that Plaintiff was capable of performing non-complex job activities that are restricted to a sitting or standing option with the residual functioning capacity ("RFC") to lift fifteen pounds, sit six hours total out of an eight-hour workday, and stand or walk for four hours of an eight-hour work day.  (*Id.*).  Additionally, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, even though she is unable to perform any past relevant work.  (Tr. 61-62).  Based on this finding, the ALJ subsequently determined that Plaintiff was not disabled as defined under the Act.  (Tr. 63).  Plaintiff requested a review of the ALJ's decision on October 10, 2008.  (Tr. 47-50).  The Appeals Council denied Plaintiff's request for review on June 16, 2009.[1] (Tr. 5-9).  On November 5, 2009, Plaintiff filed a complaint for civil action, requesting judicial review of the ALJ's decision.  (Doc. # 7).

Plaintiff was born on October 30, 1968.  (Tr. 123,  596).  Plaintiff completed the tenth grade, but never earned her GED.  (Tr. 114, 601-02).  Plaintiff was previously employed in a variety of jobs including an egg picker, hosiery knitter, prep cook, housekeeper, and seafood packager during the time period of 1997 to October 2005.  (Tr. 110-11, 132, 616).  Plaintiff's medical records relating to her alleged inability to work date back to June 1997.  (Tr. 338-41).  Plaintiff claims she is unable to engage in substantial gainful activity due to arthritis, severe lower back pain due to degenerative disc disease, asthma, COPD, seizures, carpal tunnel syndrome, anemia, severe depression, anxiety,

---

[1]The Appeals Council initially denied Plaintiff's request for review on March 26, 2009, but set aside the action in order to consider additional information submitted by Plaintiff.  (Tr. 5, 10-14).

and low IQ. (Tr. 24-42). Plaintiff's medical diagnoses include affective disorders, mild depression, COPD, chronic back pain, sinusitis, seizure disorder[2], degenerative disc disease, and carpal tunnel syndrome. (Tr. 206-20, 223-25, 228, 271, 274-76, 501-02). Plaintiff reports that the pain resulting from these medical problems has significantly reduced her ability to work since 2005. (Tr. 110).

Dr. Daniel Bodor treated Plaintiff at St. Joseph's Hospital in Tampa, Florida, in June 1997 following Plaintiff's involvement in an automobile accident earlier that month. (Tr. 339-41). Dr. Bodor performed a CT scan of Plaintiff's brain in order to determine the cause of a sudden onset of vomiting and seizure-like activity. (Tr. 341). The results of the CT scan were normal. (*Id.*). In January 1998, Plaintiff was involved in another automobile accident. Dr. Steven Mandel treated Plaintiff at St. Joseph's Hospital and noted that the results of her radiology report indicated that her cervical spine appeared normal. (Tr. 357-80).

From January 1998 until May 1998, Plaintiff underwent regular assessments by Dr. Anas Khalaf at the Khalaf Health Center in St. Petersburg, Florida. (Tr. 439-90). Immediately following the automobile accident, Plaintiff was treated by Dr. Khalaf for severe neck pain, severe headache, severe muscle pain in the thoracic area, severe low back pain, severe neck pain radiating into both arms, and severe shoulder and arm pain. (Tr. 439). During this time, Dr. Khalaf ran several tests on Plaintiff and regularly recommended follow-up evaluations during a four month period. (Tr. 439-90). During the period of treatment by Dr. Khalaf, Plaintiff went through chiropractic therapy, cryotherapy, spinal manipulations, mechanical traction, and hydrotherapy. (Tr. 446-90).

---

[2]Several examining physicians noted Plaintiff's history of seizures, but none of the treating physicians in the record actually diagnosed Plaintiff with a seizure disorder. In fact, one doctor noted seizure-like activity, but conducted a brain CT that yielded normal results. (Tr. 341).

In April 1998, Dr. Steven BiFulco treated Plaintiff at Neuromuscular Medical Centers of Florida in Tampa while she recovered from her automobile accident. (Tr. 380-83). Dr. BiFulco's diagnoses included: cervical strain and sprain, cervical disc bulge, right cervical radiculopathy, lumbar strain and sprain, lumbar facet syndrome, and carpal tunnel syndrome. (*Id.*). Dr. BiFulco placed Plaintiff in wrist splints to treat her carpal tunnel syndrome and started her on a cervical reconditioning program for her back pain. (Tr. 383). Plaintiff returned to Dr. BiFulco for a follow-up visit in July 1998. (Tr. 407-17). Dr. BiFulco determined Plaintiff's headaches, neck, and left arm had improved since her previous visit, but her dizziness and lower back had not changed. (Tr. 407). For treatment, Dr. BiFulco prescribed Skelaxin, suggested Plaintiff purchase an inversion table for her back problems, and gave her wrist splints for her arm pain and carpal tunnel syndrome. (Tr. 417).

In September 1998, Dr. William F. Meadows, III, treated Plaintiff at the Doctor's Pain Management Group in Tampa, Florida. (Tr. 538-42). Dr. Meadows determined that Plaintiff suffers from headaches, cervical and lumbar spine strains, bilateral carpal tunnel syndrome, and left trapezius strain. (Tr. 540). Dr. Meadow's treatment plan for Plaintiff included physical therapy and a regimen of Motrin and muscle relaxers. (*Id.*).

In November 1998, Dr. Stuart Goldsmith treated Plaintiff at the Orthopedic Medical Group of Tampa Bay and diagnosed her with carpal tunnel syndrome. (Tr. 501-02). Dr. Goldsmith recommended that Plaintiff undergo a carpal tunnel release procedure on her right wrist. (Tr. 502). In December 1998, Plaintiff returned to Dr. Goldsmith to undergo surgery for her carpal tunnel syndrome. (Tr. 500). In September 1999, Dr. Raghu Pulluru performed carpal tunnel release surgery on Plaintiff's left wrist at the Tampa Bay Surgery Center. (Tr. 564-79).

4

In February 2000, Dr. Fausto Garcia of Chambers Medical Group in Tampa, Florida, diagnosed Plaintiff with post traumatic headaches, thoracic strain and sprain, lumbosacral strain and sprain, and post surgical carpal tunnel syndrome. (Tr. 581-84). Dr. Garcia recommended conservative physical therapy to treat Plaintiff. (Tr. 584). Dr. Andre Roberge treated Plaintiff in February 2000 at Chambers Medical Group when a second medical opinion was suggested. (Tr. 585-90). Dr. Roberge diagnosed Plaintiff with post traumatic headaches, cervical sprain, thoracic sprain, and lumbosacral sprain. (Tr. 589). Dr. Roberge determined that Plaintiff had a fourteen percent partial permanent impairment of the whole body, did not need any additional treatment at that time, had reached maximum medical improvement, and was not a surgical candidate. (*Id.*).

During a four year period covering December 2004 to February 2009, Dr. Muhammad Ata treated Plaintiff at the Scottbsboro Medical Clinic in Scottsboro, Alabama, for various medical issues. (Tr. 144-54, 198-205, 221-55, 298-301, 321-25). Dr. Ata treated Plaintiff for: bronchitis, degenerative disc disease, abdominal pain, a scalp cyst, cough and congestion, COPD, chronic back pain, sinusitis, pharyngitis, wrist pain, reflux esophagitis, respiratory tract infection, allergic reactions to her medication, and conjunctivitis. (*Id.*). Dr. Ata's comments regarding Plaintiff's medical problems were characteristically and consistently brief. (*Id.*). To treat Plaintiff's many episodes of bronchitis, Dr. Ata prescribed antibiotics and cough syrup, advised Plaintiff to quit smoking, and on some occasions, recommended hospital admission due to her persisting symptoms. (Tr. 145, 204, 230, 240, 249, 252). Dr. Ata prescribed Lodine, Lortab, steriods, and anti-inflammatory drugs to treat Plaintiff's chronic back pain. (Tr. 235, 251). Additionally, Dr. Ata recommended an MRI, referred Plaintiff to an orthopedist, and advised her to continue physical therapy to help with her

back pain.  (Tr. 246, 250).  In response to Plaintiff's complaints of back pain, Dr. Ata encouraged her to taper her use of pain medication.  (Tr. 243, 245).

In December 2004, Dr. Harrell Cox took an x-ray of Plaintiff's chest and determined that she did not have active cardiopulmonary disease.  (Tr. 155).  In April 2005, Dr. John Reichle took an ultrasound of Plaintiff's abdominal area in response to her complaints of abdominal pain and determined that her internal abdominal area was normal.  (Tr. 277).  In October 2005, Dr. Reichle conducted an MRI of Plaintiff's spine and determined that she suffered from early degenerative disc disease.  (Tr. 274-75).  Also in October 2005, Dr. George Weatherly conducted a spine thoracic view of Plaintiff's back and determined that she had a normal thoracic spine series.  (Tr. 174-82).  In November 2005, Dr. Christopher Palmer conducted an MRI of Plaintiff's lower back, and the MRI results did not reveal any abnormalities, except for changes in the transitional lumbar vertebra.  (Tr. 166).  In October 2006, Dr. Reichle performed a CT scan of Plaintiff's brain and determined that she suffered from mild sinusitis.  (Tr. 270).

In December 2005, Dr. Dale Leonard conducted a psychiatric review of Plaintiff, diagnosed her with mild depression, and prescribed Xanax to treat her depression.  (Tr. 207-20).  In October 2008, Dr. David Wilson of Gadsden Psychological Services conducted a psychological evaluation of Plaintiff.  (Tr. 291-97).  Dr. Wilson conducted a test to determine Plaintiff's IQ, and the test yielded a Full Scale IQ of 69.  (Tr. 296).  In a summary of the evaluation, Dr. Wilson determined that Plaintiff functioned in the mild range of mental retardation, limiting her occupational options.  (Tr. 297).  Dr. Wilson opined that Plaintiff "is not capable of benefitting from any type of educational or academic training or re-training, and thus she is limited to manual labor type jobs, and her physical problems and limitations likely would make these jobs difficult, if not impossible."  (*Id.*).

He also determined that "[t]he combination of all of her problems make it highly unlikely that she could function in a work setting on an ongoing basis." (*Id.*). Dr. Wilson also found it unlikely that Plaintiff's status would improve in the following twelve months. (*Id.*).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted). Once a claimant shows that she can no longer perform her past employment,

"the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since October 18, 2005, her amended alleged onset date of disability. (Tr. 56). The ALJ further determined that Plaintiff suffers from the following severe impairments: COPD and chronic back pain secondary to lumbar degenerative disc disease. (*Id.*). The ALJ determined that these impairments, individually or in combination, are not severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P of 20 C.F.R. Part 404. (Tr. 59).

At the hearing, the ALJ called vocational expert ("VE") Dr. Susan Heape to testify. (Tr. 616). The VE determined that Plaintiff's past work consisted of jobs that were classified as exertionally medium and ranged from unskilled to semi-skilled. (*Id.*). The VE determined that most of the work skills Plaintiff acquired through her experience are not transferable to other jobs, and also that she would not be capable of performing any past work. (Tr. 616-17). The VE opined that there are other jobs that someone with Plaintiff's RFC could perform and that there are a significant number of these jobs existing in the national economy. (Tr. 617-18). However, the VE determined that if the ALJ found Plaintiff's testimony to be credible, she would not be capable of performing past work or any other work, because all of Plaintiff's claimed medical issues and limitations considered together would prevent successful work activity. (Tr. 618).

Based on the testimony of the VE and consideration of the record, the ALJ determined that although Plaintiff is unable to perform her past relevant work, she retains the RFC to perform exertionally light jobs that are unskilled. (Tr. 62-63). Based on his findings, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision. (Tr. 63).

**III.    Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, remanded.[3]  (Pl. Br. at 2). Plaintiff asserts that the Appeals Council failed to remand her case despite newly-submitted evidence that establishes disability.  (Pl. Br. at 13).  Plaintiff also contends that the ALJ failed to develop the record and his decision was not based on substantial evidence.  (Pl. Br. at 14-15).  Plaintiff also argues that the ALJ failed to provide adequate reasons for discrediting the opinion of treating physician Dr. Ata.  (Pl. Br. at 16).  Plaintiff also maintains that the ALJ failed to give adequate reasons for determining that she was not credible, and, also, that he failed to consider all of her severe impairments.  (Pl. Br. at 18-19).  Finally, Plaintiff contends that she meets the criteria for listings 12.05C and 12.04, both of which would qualify her as having a disability.  (Pl. Br. at 20-23).

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

---

[3]Plaintiff's brief does not specifically request reversal from this court.  However, this court construes Plaintiff's brief to also ask for reversal of the ALJ's decision based on the multiple issues she raises alleging errors in the ALJ's decision.  (*See* Pl. Br. at 11).

is reasonable and supported by substantial evidence.  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that proper legal standards were applied.

### A.    Appeals Council Considered the New Evidence and Properly Denied Plaintiff's Request for Review.

Plaintiff maintains the Appeals Council failed to remand her case, despite her submission of new evidence that she alleges establishes a disability.  (Pl. Br. at 13).  Specifically, Plaintiff alleges that Dr. Wilson's psychological evaluation and Dr. Ata's progress notes from June to October 2008 established a disability, and thus should have been a basis for the Appeals Council to remand her case.  (*Id.*).

When the Appeals Council has denied review, the Eleventh Circuit has held that under 405(g), a court may review that denial.  The court explained that:

> [w]hen no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.

*Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

The Appeals Council initially denied Plaintiff's request for review on March 26, 2009. (Tr. 5-9). The Appeals Council set the action aside to consider additional information, but again denied Plaintiff's request for review because the information Plaintiff submitted did not provide a basis for overturning the ALJ's decision. (*Id.*). This court has considered the evidence Plaintiff submitted to the Appeals Council and makes its decision based on both the evidence initially submitted and the new evidence submitted to the Appeals Council. The decision is specifically based on the fact that Plaintiff worked following her alleged onset of disability. (Tr. 100-07). Additionally, the court finds that the ALJ's decision, which included consideration of Plaintiff's mental impairments, was supported by substantial evidence.

### B. The ALJ Adequately Developed the Record.

Plaintiff maintains that the ALJ failed to develop the record. (Pl. Br. at 14). Specifically, Plaintiff argues that the ALJ should have requested additional medical records and inquired into her depression and other mental limitations. (Pl. Br. at 15). Plaintiff submitted eighteen additional medical records on appeal, including two opinions allegedly confirming earlier diagnoses of anxiety and depression from Dr. Ata and Dr. Wilson, and Plaintiff argues the ALJ should have made further inquiry into the newly submitted records. (*Id.*).

The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial," and that the ALJ has the duty "to investigate the facts and develop the arguments both

11

for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 104 (2000). However, an ALJ is not obligated to further develop the record if it is not necessary to enable him to make a disability determination. *Outlaw v. Barnhart*, No. 05-15996, 2006 WL 2640223, at *2 (11th Cir. Aug. 10, 2006). Furthermore, failure to further develop the record does not constitute reversible error if the ALJ had sufficient evidence on which to base his decision. *See McCloud v. Barnhart*, 166 Fed. App'x 410, 417 (11th Cir. 2006); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Plaintiff submitted numerous medical records that the ALJ relied upon in reaching his determination that Plaintiff was not disabled. Plaintiff takes issue with the ALJ's purported failure to adequately consider her depression and anxiety. (Pl. Br. at 14-15). However, in his decision, the ALJ evaluated Plaintiff's history of depression treatment and ultimately determined that her mental impairment was not severe and would only cause a minimal limitation of her ability to perform basic work activities. (Tr. 58). Plaintiff relies upon Dr. Wilson's October 2008 psychological evaluation in her argument regarding the ALJ's failure to develop the record relative to her mental disability. (Pl. Br. at 14-15). Not only was Dr. Wilson's evaluation similar to Plaintiff's previous diagnoses, but the evaluation occurred *after* the hearing and decision. Even if the ALJ's failure to request an additional psychological evaluation constitutes failure to further develop the record, he had sufficient evidence from previous diagnoses and evaluations on which to base his decision. Therefore, the court finds that Plaintiff's argument that the ALJ failed to develop the record is without merit.

### C.   Substantial Evidence Supports the ALJ's Decision That Plaintiff Has Not Been Under a Disability Through the Date of His Decision.

Plaintiff argues that the ALJ's decision was not based on substantial evidence. (Pl. Br. at 15). Specifically, Plaintiff maintains that the ALJ relied on the testimony of the VE, more so than her

medical records, in reaching his decision.  (*Id.*).  Plaintiff also argues that the VE's testimony was

not substantial evidence because the hypothetical the ALJ used was not comparable to her RFC and

other medical limitations[4] and also assumed that she could work.  (Pl. Br. at 15-16).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must

pose a hypothetical question which comprises all of the claimant's impairments."  *Ingram v.*

*Comm'r,* 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson v. Barnhart*, 284 F.3d 1219 (11th

Cir. 2002)).  However, the hypothetical is only required to include the claimant's impairments, not

every symptom that the claimant suffers from, especially if those alleged symptoms are either

alleviated by medication or not supported by medical records. *Ingram*, 496 F.3d at 1270.  In *Ingram*,

the claimant argued that the ALJ erred by failing to include several of the claimant's symptoms in

the hypothetical posed to the VE, including claimant's fatigue, insomnia, anxiety, and depression.

*Id.*  The court determined that the hypothetical the ALJ posed to the VE was proper, even though it

did not include some of the claimant's limitations.  *Id.*

The hypothetical that the ALJ posed to the VE was as follows:

> I'd like you to assume a hypothetical individual of the claimant's age,
> education, and vocational background.  Assume such individual can
> lift objects weighing up to 15 pounds, can sit for six of eight hours
> per day, and stand and walk for four of eight hours per day but would
> need the option to sit or stand.  They could not be exposed to
> extremes of temperature or pulmonary irritants, nor work around
> unprotected heights.  They would be precluded from the operation of
> machinery, and would be limited to non-complex job activities.

---

[4]Specifically, Plaintiff argues that the ALJ failed to include COPD, chronic back pain
secondary to lumbar degenerative disc disease, seizures, carpal tunnel syndrome, depression, anxiety,
and low IQ in his hypothetical.

(Tr. 617).  Although the ALJ's hypothetical did not explicitly list every impairment and symptom that Plaintiff allegedly suffers from, the hypothetical implicitly embodies many of the limitations an individual similar to Plaintiff would face in a work environment, covering Plaintiff's major impairments.  Additionally, and contrary to Plaintiff's argument, the ALJ is not required to include every symptom from which Plaintiff suffers.  *See Ingram*, 496 F.3d at 1270.  The court finds that the ALJ's hypothetical correctly addressed all of Plaintiff's major impairments. Therefore,  Plaintiff's argument that the ALJ's hypothetical was improper and that his decision therefore was not supported by substantial evidence is without merit.

**D.     The ALJ Accorded Proper Weight to the Opinion of Treating Physician Dr. Ata.**

Plaintiff alleges that the ALJ failed to accord adequate weight to the opinion of her treating physician, Dr. Ata.  (Pl. Br. at 17).

The weight afforded a medical source's opinion on the issues of the nature and severity of a claimant's impairment depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his or her opinion, how consistent the opinion is with the record as a whole, the speciality of the medical source, and other factors.  *See* 20 C.F.R. § 416.927(d).  The treating physician's opinion must be given substantial weight unless good cause is provided to contradict it.  *Crawford v. Comm'r*, 363 F.3d 1155, 1159 (11th Cir. 2004).  However, a treating physician's opinion does not have to be afforded a considerable amount of weight when it is not accompanied by objective medical evidence.  *Id.*  In *Crawford*, the court found that the treating physician's opinion should be discounted because it was

inconsistent with his treatment notes, unsupported by medical evidence, and was based upon the claimant's subjective complaints. *Id.*

In the ALJ's decision, he clearly articulates his reasoning for not affording controlling weight to Dr. Ata's opinion: "[t]he medical opinion by Muhammad Ata, M.D., a treating source, is not afforded controlling weight as it appears to be inconsistent with his clinical findings of record and largely based upon the claimant's subjective allegations, which are not credible." While Dr. Ata treated Plaintiff intermittently from December 2004 to February 2009, most of Plaintiff's visits predominately concerned her respiratory problems. (*See* Tr. 144-54, 198-205, 221-55, 298-301, 321-25). Dr. Ata traced some of Plaintiff's respiratory problems to her COPD and history of smoking and usually recommended conservative courses of treatment including use of an inhaler, steroids and antibiotics, and at times, over the counter medications. (Tr. 144-45, 201, 230, 323). Occasionally, Dr. Ata recommended hospital admission for Plaintiff's respiratory complications, but it is unclear from the record whether Plaintiff adhered to these recommendations. (Tr. 204, 232).

Plaintiff did not often seek Dr. Ata's care for her back problems. During the four year period in which Dr. Ata treated Plaintiff, she only presented complaints regarding her back pain on about fifteen of roughly forty-five visits. (*See* Tr. 144-54, 198-205, 221-55, 298-301, 321-25). Again, Dr. Ata treated Plaintiff's injuries conservatively, typically with a regimen of low-dose pain medications. (Tr. 235, 251).

As a whole, Dr. Ata's treatment notes were very brief, and on most occasions, fairly general. Again, during the four year period in which he treated Plaintiff, he never recommended surgery and only prescribed low-doses of pain medication to treat Plaintiff's chronic pain symptoms. (*See* Tr.

15

144-54, 198-205, 221-55, 298-301, 321-25). Furthermore, many of Dr. Ata's treatment notes seem to be based on Plaintiff's subjective complaints.

Dr. Ata's medical opinion was inconsistent with his treatment notes, unsupported by medical evidence in the record, and appears to be based upon Plaintiff's subjective complaints. Therefore, the ALJ had sufficient and legally supported reasons for not giving the treating physician's opinion controlling weight in his decision. Therefore, the court finds that Plaintiff's argument that the ALJ failed to give adequate reasons for discrediting the treating physician's opinion is without merit.

### E.    The ALJ Provided Adequate Reasons for Finding Claimant Not Credible.

Plaintiff maintains that, in his decision, the ALJ failed to state adequate reasons for finding her subjective pain testimony was not credible. (Pl. Br. at 18).

Obviously, credibility determinations are made by the ALJ and a certain amount of discretion is afforded the ALJ in making them. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Federal regulations provide that in evaluating symptoms, the ALJ will:

> consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4). The Eleventh Circuit has held that the ALJ must provide explicit articulation of the reasons behind his decision to discredit a claimant's subjective pain testimony. *Moore*, 405 F.3d at 1212. The pain standard mandates that a claimant's subjective pain testimony be supported by objective medical evidence in order to be credited. Specifically, the pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

In the ALJ's decision, he directly cited the language of the Eleventh Circuit's pain standard and subsequently articulated specific reasons for discrediting Plaintiff's subjective pain testimony. (Tr. 60). He found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but further determined that Plaintiff's testimony regarding "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. 60). In reaching this determination, the ALJ considered Plaintiff's testimony regarding her daily activities, the medical evidence contained in the record, and the treatment plans of Plaintiff's physicians. (*See* Tr. 60-61).

In considering Plaintiff's daily activities, the ALJ relied upon Plaintiff's testimony at the hearing, which indicated that she had a driver's license and drove regularly. (Tr. 60, 610). Plaintiff was able to shop for groceries and complete household chores with some assistance. (*Id.*). The record also revealed that Plaintiff was able to take care of her two sons as well as her fifteen-year-old brother. (Tr. 60, 599-600). Additionally, Plaintiff worked for eight months in 2006, which was after her alleged onset of disability. (Tr. 60, 100-07).

In determining that Plaintiff's subjective pain testimony was inconsistent with the medical evidence, the ALJ noted that Plaintiff's complaints regarding her lower back pain and arm pain occurred only intermittently, and she only had isolated complaints of lower extremity numbness and

17

swelling.  (Tr. 60).  The ALJ also found that Plaintiff did not seek treatment for migraine headaches or any secondary effects from migraines such as dizziness or blurred vision.  (Tr. 61).

The ALJ also found that the different courses of treatment Plaintiff received for her various medical issues were inconsistent with her subjective pain testimony. For example, Plaintiff was given the same Lortab prescription since 2006 to treat her back, and none of her physicians recommended surgery to treat the existing pain.  (*Id.*).  With regard to Plaintiff's COPD and other respiratory problems, the ALJ noted that her symptoms quickly resolved with steroid and antibiotic treatment courses.  (*Id.*).

The ALJ provided several reasons for discrediting Plaintiff's testimony, all of which are consistent with the requirements set forth by the Eleventh Circuit's pain standard.  Because the ALJ's decision articulated his reasons for discrediting Plaintiff's subjective pain testimony, the court finds that Plaintiff's argument is without merit.

### F.    The ALJ Properly Considered All of Plaintiff's Severe Impairments.

Plaintiff maintains that although the ALJ determined that she suffers from COPD and chronic back pain secondary to degenerative disc disease (both severe impairments), he failed to consider other impairments she contends are severe including arthritis, asthma, carpal tunnel syndrome, anemia, severe depression, generalized anxiety disorder, and low IQ.  (Pl. Br. at 19).

A severe impairment is an impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  An impairment is not severe if it does not significantly inhibit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  "In assessing RFC, the

18

adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe."  S.S.R. 98-6p (internal quotations omitted).

In the third step of the sequential evaluation process, the ALJ determined that Plaintiff's severe impairments included COPD and chronic back pain secondary to lumbar degenerative disc disease.  (Tr. 56).  In the ALJ's discussion of the third step, he considered a number of Plaintiff's other impairments including pain in the left wrist, pain in the right elbow, joint pain, a case of sinusitis revealed by an MRI after a passing-out spell, depression, and a mental impairment.[5]  (Tr. 56-59).

While considering Plaintiff's wrist and elbow pain, the ALJ noted that Plaintiff's complaints regarding these impairments were isolated.  (Tr. 57).  The ALJ also observed that treatment of these impairments occurred on an infrequent basis, and that Plaintiff was prescribed a very low dose of medication (5 mg. of Lortab) for the related pain.  (*Id.*).  Additionally, the ALJ mentioned that Plaintiff was working at a chicken house during the time of these alleged complaints of pain.  (*Id.*).  The ALJ also considered Plaintiff's complaints of joint pain and observed that the treating physician did not find any signs of arthritis.  (*Id.*).  He further noted that Plaintiff was maintained on Lortab for pain control.  (*Id.*).

Although Plaintiff alleged a history of seizures, a 2006 brain MRI revealed only a mild case of sinusitis, and the ALJ noted this fact in the third step of his analysis.  (*Id.*).  The ALJ also

---

[5]The ALJ did not consider Plaintiff's alleged anxiety or low IQ because, as discussed earlier in subsection "A," evidence of these impairments came from a psychological evaluation performed by Dr. Wilson in October 2008, nearly two months after the ALJ issued his decision.  (Tr. 291-97).  The Appeals Court, however, did have an opportunity to review these records, and denied Plaintiff's request for review after determining that the additional information did not provide a substantial basis for changing the ALJ's decision.  (Tr. 10-14).  *See, Ingram*, 496 F.3d at 1262.

considered Plaintiff's alleged depression, and found that Dr. Ata treated her for mild depression with a course of Xanax in 2005, and Trazodone and Limbitrol DS in 2006 for depression and insomnia. (Tr. 58).   The ALJ characterized Dr. Ata's treatment of Plaintiff's depression as "intermittent" and determined that this impairment did not cause more than a minimal limitation in her ability to perform basic mental work activities, rendering the impairment nonsevere.  (*Id.*).   The ALJ also considered Plaintiff's respiratory complications and noted that this issue was treated conservatively with a courses of steroids and antibiotics.  (*Id.*).

The ALJ considered the impairments that Plaintiff claims were severe and ultimately determined that they were not severe.  (*See* Tr. 56-59).   In determining severity, the ALJ considered the frequency of which Plaintiff sought treatment for her alleged impairments and the physician's recommended course of treatment.  (*Id.*).   The ALJ also noted Plaintiff's ability to work during the time period of some of her alleged impairments.  (Tr. 57).   The court finds that the ALJ properly considered all of Plaintiff's impairments and took into account her treatment and activities in determining the severity of her impairments.   His findings are supported by substantial evidence. Therefore, Plaintiff's argument is without merit.

G.     **The ALJ Properly Determined Plaintiff's Impairments Did Not Meet or Equal any Listed Impairment.**

Plaintiff claims she meets the impairments listed in §§ 12.05C and 12.04 of 20 C.F.R. Part 404, Subpart P, App'x 1.  (Pl. Br. at 20-23).   Plaintiff maintains that her full scale IQ of 69 along with consideration of Dr. Wilson's October 2008 evaluation supports a finding of disability under § 12.05C.  (Pl. Br. at 20-21).   Plaintiff also contends that Dr. Wilson's evaluation indicating she

suffers from depression and anxiety along with Dr. Ata's records noting her depression, demonstrate she does qualify for disability under § 12.04. (Pl. Br. at 21-23).

The claimant bears the burden of proving the existence of a disability. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). An ALJ is to follows a special technique when evaluating the severity of a claimant's mental impairments which entails rating the degree of functional limitation resulting from any determined impairment and determining the severity of the mental impairment. 20 C.F.R. § 404.1520(a).

In his decision, the ALJ considered the limitations of Plaintiff's daily living activities, maintaining social functioning, and concentration, persistence or pace. (Tr. 58). The ALJ also considered the four broad functional areas provided in the disability regulations for evaluating mental disorders.[6] (Tr. 58-59). The ALJ found that because Plaintiff's medically determinable mental impairment only caused a mild limitation in the first three functional areas and no limitation in the fourth functional area, the mental limitation was nonsevere. (Tr. 59). Furthermore, as discussed in subsection "A," Dr. Wilson's evaluation was conducted almost two months after the issuance of the ALJ's decision, and therefore was only considered by the Appeals Council and not the ALJ. Therefore, the ALJ lacked a basis for considering whether Plaintiff qualified for a disability under 12.05C: (mental retardation), because the only evidence that was available for him to consider related to Plaintiff's mental impairments were Dr. Ata's treatment notes regarding Plaintiff's alleged depression.

---

[6]The four broad functional areas are known as the "paragraph B" criteria and are set forth in 20 C.F.R. Part 404, Subpart P, App'x 1.

The ALJ adhered to the proper procedure for considering Plaintiff's depression as a mental impairment. (*See* Tr. 58-59). And, his determination that Plaintiff's mental impairment was nonsevere is supported by substantial evidence. The ALJ did not have an opportunity to consider evidence related to Plaintiff's alleged mental impairment of mental retardation, but that evidence was considered by the Appeals Council and review was properly denied by the Council. Because Plaintiff's evidence supporting or related to her alleged impairments under 12.04 and 12.05C was properly considered at some level of review and subsequently denied and because those decisions were based on substantial evidence, the issues were properly decided and Plaintiff's arguments are without merit.

## VI.    Conclusion

For reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____20th_____ day of December, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

22